UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GLADYS YOUNG on Behalf of Themselves and All Others Similarly Situated, et al., Plaintiffs, v. CHINTU PATEL, et al., Defendants. | ) | No. 1:25-cv-02552-TWP-TAB |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENTS**

## I. Introduction

Plaintiffs worked at various Subway locations in Indiana and Kentucky managed by Defendant Chintu Patel. Plaintiffs allege that Defendants violated the Fair Labor Standards Act by failing to pay all the wages owed to them. Plaintiffs initiated this lawsuit with the assistance of counsel. Thereafter, the parties negotiated purported settlement agreements informally, without the assistance of their counsel. Defendants now seek to have the Court enforce these alleged oral settlement agreements. As discussed below, the facts before the Court undermine Defendants' argument that the parties reached a meeting of the minds. Accordingly, Defendants' motion to enforce settlement agreements [Filing No. 37] should be denied.

## II. Background

On December 17, 2025, named Plaintiffs Gladys Young, Alyssa Taul, Amber Dunn, Juifria Maynard, and Kendra Powell filed suit against Defendants Patel, Malkit Singh, and a number of entities which represent Subway locations owned and operated by Patel in Indiana and Kentucky. [Filing No. 1.] Plaintiffs asserted collective action claims under the FLSA for alleged

unpaid overtime wages. Between December 29, 2025, and January 28, 2026, three additional individuals opted-in to this action—Haley McKinney, Matthew Stewart, and Christina Best—asserting identical claims against Defendants. [Filing Nos. 11, 13, and 18.] Additional opt-ins were filed in February 2026.[1]

The parties dispute who initiated early settlement discussions. Plaintiffs' counsel contends that Patel or one of his management employees initiated the discussion. In contrast, according to Patel, in late January 2026, Maynard, Powell, and McKinney approached Patel to negotiate a settlement of their claims, without the knowledge or assistance of counsel. On January 29, 2026, Maynard, who was previously terminated, emailed Patel, stating that, in exchange for certain raises in hourly rates, payments, and reinstatement of her job, she, Powell, and McKinney would dismiss their claims against Defendants. Maynard included Defendants' counsel on her email.[2] Defendants' counsel responded and stated that he could not have any direct contact with her because she was represented by legal counsel. Maynard responded, "I don't need my attorney, so what do I need to do here? Fire him? Because I will do that right now." [Filing No. 37-6, at ECF p. 7.]

Following this email, Maynard and Patel spoke on the phone and came to an oral settlement agreement, which Patel indicates included the following terms: Patel would re-hire Maynard as a store manager at an increased rate of pay to $20 per hour and increase McKinney's and Powell's rates of pay to $17 per hour. [Filing No. 37-18, at ECF p. 2. ] Maynard reiterated

---

[1] Defendants do not indicate that oral settlement was reached directly with any of the additional opt-ins who are not discussed by name in this order.

[2] While Maynard sent this email to Patel and his counsel in January 2026, counsel for Defendants did not appear in this case until March. [Filing No. 24.] Thus, Plaintiffs' counsel speculates that someone for Defendants must have previously informed Maynard that counsel represented Defendants and provided defense counsel's email address to her.

these terms in a subsequent email on February 4, 2026, to Patel. [Filing No. 37-7, at ECF p. 1.] Based on these agreements, Powell and McKinney's increased rates of pay were backdated and began on January 28, 2026, and they have continued to receive their increased hourly rates ever since. Patel re-hired Maynard beginning on February 4, 2026, and she continues to work for Defendants.

On January 31, 2026, Maynard, Powell, and McKinney sent identical emails to Plaintiffs' counsel, Ron Weldy, stating they "no longer wish to pursue the lawsuit against Chintu Patel or [the remaining Defendants] and that they "wish to have no more contact." [Filing No. 37-8.] On February 14 and 15, 2026, Maynard, Powell, and McKinney sent emails to Patel stating that they wished to withdraw any claims they had made against Defendants and dismiss the lawsuit and requesting that no attorney or representative contact them regarding this matter in the future. [Filing No. 37-9.] The emails used verbatim language provided to Plaintiffs via text message by Tonya Easton, a district manager who worked for Patel. [Filing No. 46-3, at ECF p .1.]

In early February 2026, Patel spoke with named Plaintiff Gladys Young, who wished to negotiate a settlement agreement on behalf of herself, Alyssa Taul, and Amber Dunn, each of whom were employed at one or more Subway restaurants in Kentucky. The parties discussed settlement amongst themselves, and on February 23, 2026, Young, Taul, and Dunn emailed Patel the following settlement terms: Dunn agreed to release and dismiss any claims she had against Defendant for a one-time $5,000 payment and pay raise to $17 per hour, and payment of any and all legal fees she may owe. Taul agreed to release and dismiss any claims she had against Defendants in exchange for a one-time $5,000 payment, a raise to $18 per hour, and $500 per month for the next 24 months. Finally, Young agreed to release and dismiss any claims she had against Defendants in exchange for a one-time payment of $30,000, payment of $6,000 a month

for the next 24 months, payment of all legal fees associated with this claim, and payment of all debt she owed to the IRS for the year 2024. [Filing No. 37-10.]

On March 11, 2026, Defendants' counsel emailed Plaintiffs' counsel, informed him that a settlement in principle had been reached between these parties, and attached proposed settlement agreements. [Filing No. 37-11.] Defendants' counsel requested Plaintiffs' counsel's fees and costs to insert into the settlement agreements. [Filing No. 37-11, at ECF p. 2.] On March 12, 2026, Patel and Defendant Singh met with Young at Patel's office in Greenwood, Indiana, to negotiate and finalize the terms of settlement with Young and Dunn.[3] That same day, Defendants' counsel emailed Plaintiffs' counsel to inform him that the settlement terms between Young and Defendants were finalized. Defendants' counsel once again requested fees and costs from Plaintiffs' counsel. [Filing No. 37-11, at ECF p. 1.] On March 18 and 19, 2026, Young, Dunn, Taul, and Maynard sent identical emails to Patel and Plaintiffs' counsel which stated they were writing to confirm agreement to the final settlement terms and asked how to complete the process. [Filing No. 37-12.] According to Young's affidavit, Singh provided the language for these emails. [Filing No. 46-4, at ECF p. 2.]

Sometime in March 2026, Plaintiffs' counsel orally informed counsel for Defendants his fee agreement with Plaintiffs was for 40% of the money and/or value of the settlement obtained. [Filing No. 46-1, at ECF p. 2.] The Court held an initial pretrial conference on March 24, 2026. In light of the parties' progress towards settlement, the Court declined to put a Case Management Plan in place and set an April 21, 2026, telephonic status conference. [Filing No. 32.]

[3] Young's affidavit states that she made three trips to Greenwood to discuss settlement with Patel, as well as a fourth and final meeting in Louisville, Kentucky. She only received mileage for her third trip to Greenwood. [Filing No. 46-4.]

On March 24 and 25, 2026, McKinney and Powell sent identical emails to Plaintiffs' counsel and Patel—using the same language provided via text by Patel's manager, Easton, to other Plaintiffs—that they were writing to confirm agreement to the final settlement terms and asking how to complete the process. [Filing No. 37-13.] Plaintiffs' counsel requested Word versions of the purported settlement agreements, and Defendants' counsel provided those on April 1, 2026. [Filing No. 37-14.] On April 21, 2026, shortly before the telephonic status conference with this Court, Plaintiffs' counsel indicated to Defendants' counsel that he was redlining the agreement with Young and that Powell, Maynard, and McKinney would not be signing the proposed settlement agreements.[4] Thus, the parties have not executed any written agreements. On May 8, 2026, Defendants filed their motion to enforce the alleged oral settlement agreements. [Filing No. 37.]

## III. Discussion

Defendants argue that they entered into binding oral settlement agreements with Young, Taul, Dunn, Maynard, Powell, and McKinney, and the Court should enforce these agreements. Plaintiffs argue that the settlement agreements are not enforceable because there is clearly no meeting of the minds on certain terms, including attorney fees.

> Settlement agreements are contracts governed by state law. A valid contract consists of an offer, acceptance, consideration, and mutual assent. Under Indiana law, a settlement agreement must include a meeting of the minds, which focuses on each party's outward manifestation of intent, not their subjective intent. Indiana law does not require that settlement agreements be in writing, so long as the terms are sufficiently definite, and the parties demonstrate an intent to be bound.

*Powe v. Biolife Plasma, L.L.C.*, No. 1:24-cv-01912-JRS-MKK, 2026 WL 2600948, at *3 (Sept. 3, 2026) (internal citations, quotation marks, and ellipses omitted). Defendants argue that the

[4] On April 24, 2026, McKinney emailed Plaintiffs' counsel and stated that she wants to opt out of the lawsuit and no longer be contacted about it. [Filing No. 37-17.]

oral settlement agreements reached between the parties satisfy each element of a contract under Indiana law. However, there are concerning facts surrounding the alleged FLSA settlement agreements reached by the parties that cause the Court to question whether the parties had a true meeting of the minds.

First, the parties have unequal bargaining power. Plaintiffs are, or were, employees of Defendants. While Plaintiffs are represented by counsel, they ultimately negotiated settlement agreements on their own, without the benefit of counsel, through direct conversations with their former (or, in some cases, current) bosses. The alleged settlements are piecemeal, which adds to the problematic fabric of this arrangement. Those agreements include promises that Plaintiffs will be re-hired for their positions at Defendants' Subway stores and, in some cases, would receive raises and other additional compensation if they dismiss the claims against Defendants. Given the context, these alleged settlements deserve scrutiny. *See, e.g., Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) ("The court must review [FLSA] settlements because there is a fear that employers would coerce employees into settlement and waiver of their claims." (Internal citation and quotation marks omitted)); *Braddock v. Madison County*, 34 F. Supp. 2d 1098, 1106 (S.D. Ind. 1998) ("Because employers often have much greater bargaining power than employees, Congress made the FLSA's provisions mandatory, so that they are not subject to negotiation or bargaining between employers and employees.").

Plaintiffs set forth concerning facts indicating potential coercion, or at least unequal positioning in the settlement negotiations, with Defendants allegedly supplying form language to Plaintiffs to send to their counsel and settlement proposals that directly linked Plaintiffs' employment to the settlement. Plaintiffs also describe settlement discussions where non-attorneys, such as Maynard and Young, negotiated for themselves, as well as their co-workers.

These discussions seemingly resulted in substantially better alleged settlements for the negotiating co-workers. Maynard received a managerial position, and Young received the largest lump sum settlement offer.

In addition, the parties have not reached any meeting of the minds on attorney fees. Defendants admit that they agreed to pay the attorney fees and costs of Dunn, Taul, and Young as part of their settlement agreements. Plaintiffs' counsel indicates that sometime in March 2026, he informed Defendants' counsel that his fee agreements with Plaintiffs call for 40% of the money and/or value of the settlement obtained. However, Defendants do not wish to pay this amount. Rather, Defendants argue that Plaintiffs' counsel should be required to submit a lodestar figure for attorney fees. Thus, the attorney fees portion of any purported settlement remains in dispute.

The parties devote much of their briefing to quarreling over whether the alleged settlement terms would be declared reasonable at a fairness hearing. Approval of an FLSA settlement requires two steps: first, the Court must make sure there even is a settlement in the realm of potentially acceptable settlements, and then the Court conducts a fairness hearing. *See Burnett v. Conseco Life Ins. Co.*, No. 1:18-CV-00200-JPH-DML, 2020 WL 4207787, at *3–4 (S.D. Ind. July 22, 2020). However, no fairness hearing is necessary if the parties have no meeting of the minds on definite settlement terms. It is concerning that to gain the alleged settlement consideration, Maynard, Powell, McKinney, Dunn, Taul, and Young must continue to work for Patel. While Dunn, Taul, and Young negotiated, in part, a lump sum, the other Plaintiffs would lose all benefit of the bargain if they quit or were terminated. The purposed settlement terms do not appear to contain any guarantee of employment.

An added difficulty with the purported settlement is that some Plaintiffs now want nothing to do with this case. For instance, as noted above, McKinney sent Plaintiffs' counsel an email on April 24, 2026, indicating she wanted to opt out of this lawsuit. Her current stance and status in this litigation is ambiguous, at best. All these facts together undermine Defendants' argument that the parties reached a meeting of the minds.

## IV. Conclusion

For all these reasons, Defendants' motion to enforce settlement agreements should be denied. [Filing No. 37.] Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 10/8/2026

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email